COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                     NOS.
2-05-00386-CR

      2-05-00387-CR

 

 

PHILLIP DEWAYNE MAYFIELD                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 396TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Phillip Dewayne
Mayfield appeals his convictions for indecency with a child (L.A.), aggravated
sexual assault (of T.A.), and indecency with a child (T.A.).  The jury assessed punishment at two years= confinement and recommended probation for the indecency with a child
conviction involving L.A.; fifteen years= confinement for the aggravated sexual assault involving T.A.; and ten
years= confinement with a recommendation of probation for the indecency with
a child conviction involving T.A.  The
trial court sentenced Mayfield accordingly. 
On appeal, Mayfield raises six issues, arguing that the trial court
erred by admitting four pieces of extraneous bad acts evidence, that the trial
court erred by overruling his motion for mistrial, and that the cumulative
effect of these errors requires reversal. 
We will affirm.

II.  Factual Background

Mayfield started living with
M.G.A. and her four children when M.G.A.=s oldest daughter, T.A., was in the third grade.  When T.A. turned thirteen and was in the
seventh grade, Mayfield moved her clothes out of the way and rubbed her
behind.  Later, Mayfield progressed to
putting his fingers in T.A.=s genitals and having oral and vaginal sex with her.  Mayfield continued to have sex with T.A.
until she turned sixteen and told him that it was wrong and that she wanted it
to stop.  Several years later, Mayfield
approached T.A.=s younger
sister L.A. while she was playing a computer game and fondled her chest after
he had massaged her shoulders.  Both
girls eventually reported the incidents to their mother, and ultimately
Mayfield was charged and convicted of the present offenses.

 








III.  Extraneous Bad Acts Evidence

In his first four issues,
Mayfield argues that the trial court erred by admitting evidence of extraneous
bad acts:  being a APeeping Tom,@ assaulting
a neighbor named Debra Edwards, drinking, and having a shouting match with
M.G.A.  The State responds that the APeeping Tom@ evidence
was admissible to rebut testimony that Mayfield was not the type of person to
commit a sexual offense involving children and to rebut a defensive theory; the
State also responds that Mayfield waived any error in the admission of the
other extraneous bad acts evidence by failing to object every time that the
evidence was mentioned.  Because the
State asserts that Mayfield may have waived some of his issues, we first review
the record to determine whether Mayfield properly preserved the alleged error
regarding the four extraneous bad acts before proceeding to a 403 and 404(b)
analysis.

A.     Preservation of Error








Outside the presence of the
jury, both sides took Debra Edwards, Mayfield=s neighbor, on voir dire and questioned her about a APeeping Tom@ incident,
Mayfield=s drinking, and an altercation Mayfield had with her.  Mayfield objected to the admission of Edwards=s testimony, arguing that her testimony was not relevant, was cumulative,
and was barred under rules of evidence 403, 404(b), and 401.  The trial court overruled Mayfield=s objections but granted him a running objection.

To preserve error, a party must continue to object each time
the objectionable evidence is offered.  Fuentes
v. State, 991 S.W.2d 267, 273 (Tex. Crim. App.), cert. denied, 528
U.S. 1026 (1999); Ethington v. State, 819 S.W.2d 854, 858-59 (Tex. Crim.
App. 1991).  A trial court=s erroneous
admission of evidence will not require reversal when other such evidence was
received without objection, either before or after the complained-of
ruling.  Leday v. State, 983
S.W.2d 713, 718 (Tex. Crim. App. 1998); Johnson v. State, 803
S.W.2d 272, 291 (Tex. Crim. App. 1990), cert. denied, 501 U.S. 1259
(1991), overruled on other grounds by Heitman v. State, 815 S.W.2d 681
(Tex. Crim. App. 1991).  This rule
applies whether the other evidence was introduced by the defendant or the
State.  Leday, 983 S.W.2d at 718.








One exception to this general rule is when a defendant
offers evidence identical to that which he objected to earlier to rebut,
destroy, or explain the previously admitted evidence.  Id. at 718-19; Rogers v. State,
853 S.W.2d 29, 35 (Tex. Crim. App. 1993). 
Another exception is that a request for a running objection is timely
and preserves error as long as it does not encompass too broad a subject matter
during too broad a time or over different witnesses.  Ford v. State, 919 S.W.2d 107, 113 (Tex.
Crim. App. 1996); Sattiewhite v. State, 786 S.W.2d 271, 283 n.4 (Tex.
Crim. App. 1989), cert. denied, 498 U.S. 881 (1990).  A third exception is if a trial court hears
objections to proffered evidence outside the jury=s presence and
rules that the evidence is admissible, the objections are deemed to apply to
the evidence when it is admitted before the jury without the necessity of
repeating the objections.  Tex. R. Evid. 103(a)(1); Geuder v. State,
115 S.W.3d 11, 13-14 (Tex. Crim. App. 2003); Ethington, 819 S.W.2d at
859.

1.     Evidence Of Drinking

Edwards testified in front of
the jury that Mayfield A[did] quite
a bit of drinking, and he became very loud, very rude when he was
drinking.  Violent.  He staggered.@  Edwards also testified that
Mayfield appeared intoxicated when she spotted him being a APeeping Tom@ and when he
assaulted her.  Although this testimony
was covered by the running objection that the trial court granted Mayfield,
prior witnesses had already testified without objection regarding Mayfield=s drinking habits.  For
instance, M.G.A. testified without objection that Mayfield Aused to drink a lot@ and that he was crazy when he drank. 
Mayfield=s counsel
cross-examined M.G.A. regarding Mayfield=s drinking.  And, M.G.A.
testified on redirect without objection that someone intervened to talk to
Mayfield about his drinking problem.  Additionally,
M.G.A.=s sister and T.A. both testified without objection about Mayfield=s drinking problem.








Because evidence about
Mayfield=s drinking was
admitted without objection before the complained-of ruling, Mayfield failed to
preserve any error associated with Edwards=s testimony
regarding Mayfield=s drinking problem.  See Fuentes, 991 S.W.2d at 273; Leday,
983 S.W.2d at 718; Johnson, 803 S.W.2d at 291.  We therefore
overrule Mayfield=s third
issue.

2.     Evidence Of Shouting Match
With M.G.A.

Edwards testified that on a
couple of occasions, she had heard M.G.A. and Mayfield fighting, mainly
Mayfield screaming.  Mayfield=s counsel cross-examined Edwards, confirming that she had heard
Mayfield screaming at M.G.A. while he was drunk.  Although this testimony was also covered by
the running objection that the trial court granted Mayfield, prior witnesses
had already testified without objection regarding Mayfield=s fights with M.G.A.  Specifically,
prior to Edwards=s testimony,
L.A. testified during questioning by Mayfield=s counsel that she knew that her mother and Mayfield were having
problems with their relationship and that she had heard their frequent
arguments.  M.G.A.=s sister testified without objection that Mayfield was physical and
violent with M.G.A. and that he had pushed her and hit M.G.A. in the past.  T.A. testified without objection that
Mayfield was Amean@ to her mom and had once tipped over a couch on which M.G.A. had been
sitting.








Because evidence of
Mayfield=s arguments and
fights with M.G.A. was admitted without objection before the complained-of
ruling, Mayfield failed to preserve any error associated with Edwards=s testimony
regarding Mayfield=s shouting match with M.G.A.  See Fuentes, 991 S.W.2d at 273; Leday,
983 S.W.2d at 718; Johnson, 803 S.W.2d at 291.  We overrule
Mayfield=s fourth issue.

3.     Evidence Of Assaulting
Edwards








Edwards also testified
regarding one occasion when Mayfield swung her around, pushed her, and
threatened to punch her.  Specifically,
Edwards testified that her oldest daughter had told her that Mayfield=s stepson was bugging her younger sister and that she had told him to
leave her sister alone. Mayfield thereafter accused Edwards of hitting his
stepson and of calling his stepson a derogatory term.  Edwards tried to explain that she had never
touched his stepson or called him a name. 
Despite her response, Edwards testified that Mayfield swung her around,
pushed her, and threatened to punch her. 
Later, Mayfield took the stand and explained that he had verbally
confronted Edwards about hitting his stepson but that he had never had a
physical confrontation with her or any other woman.  Mayfield=s explanation concerning this extraneous bad act is the only other
testimony in the record regarding this event; therefore, Mayfield did not waive
his objections to this extraneous bad act evidence.  See Leday, 983 S.W.2d at
718.  The State concedes that this bad act testimony
was not relevant.  We agree and
accordingly hold that the trial court erred by admitting it.  See, e.g., Russell v. State, 113
S.W.3d 530, 541 (Tex. App.CFort Worth 2003, pet. ref=d).

Having found error, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  Tex. R. App. P. 44.2. 
Because the error in admitting the evidence was nonconstitutional error,
we apply rule 44.2(b) and disregard it if it did not affect appellant=s substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State,
961 S.W.2d 639, 642-43 (Tex. App.CFort Worth 1998, pet. ref=d).

A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.  In making this determination, we
review the record as a whole.  See
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).








In the present case, Edwards=s testimony on this extraneous bad act took up less than ten pages in
the 575-page record of the trial on the merits. 
Prior to closing arguments, the trial court read the charge to the jury,
instructing them that

if
there is any testimony before you in this case regarding the Defendant=s
having committed bad acts other than the offense alleged against him in the
indictment in this case, you cannot consider said testimony for any purpose
unless you find and believe beyond a reasonable doubt that the Defendant
committed such other bad acts, if any were committed, and even then you may
only consider the same in determining the intent of the Defendant, if any, in
connection with the offense, if any, alleged against him in the indictment in
this case, and for no other purpose.

 

Thereafter, the State during its closing argument
reminded the jurors that the case was not about anyone except T.A. and
L.A.  The State made only one inexplicit
reference to Mayfield=s encounter
with Edwards, describing it as Athat incident that happened but didn=t happen.@

We conclude that, in the
context of the entire case against appellant, the trial court=s error in admitting the testimony in question did not have a
substantial or injurious effect on the jury=s verdict and did not affect appellant=s substantial rights.  See
King, 953 S.W.2d at 271.  Thus, we
disregard the error.  See Tex. R. App. P. 44.2(b).  We overrule Mayfield=s second issue.

 

 

 

 








4.     APeeping Tom@ Evidence

Our review of the record
demonstrates that Mayfield was granted a running objection to the APeeping Tom@ evidence
presented by Edwards. Edwards testified that on two occasions she caught
Mayfield looking into her daughters= bedrooms while the girls were undressing.  This evidence was not admitted through any
other witness; therefore, Mayfield=s running objection regarding the APeeping Tom@ evidence
preserved this alleged error.  We thus
proceed to analyze the admission of this evidence under rules 403 and 404(b).

B.     Standard Of Review For A
Determination Under Rule 404(b)








Rule 404(b) embodies the established principle that a
defendant is not to be tried for collateral crimes or for being a criminal
generally.  Tex. R. Evid. 404(b); Nobles v. State, 843 S.W.2d 503,
514 (Tex. Crim. App. 1992); Jones v. State, 119 S.W.3d 412, 418 (Tex.
App.CFort Worth 2003, no pet.). Consequently, extraneous
offenses are not admissible at the guilt-innocence phase of trial to prove that
a defendant acted in conformity with his character by committing the charged
offense.  Tex. R. Evid. 404(b); Jones, 119 S.W.3d at 418.  An extraneous offense, however, has
noncharacter-conformity relevance where it has any tendency to make the
existence of a fact that is of consequence to the determination of the action
more or less probable than it would be without the evidence.  Tex.
R. Evid. 401; Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim.
App. 2001).  That is, extraneous offense
evidence that tends to make an elemental or evidentiary fact more or less
probable or tends to rebut some defensive theory is relevant beyond its
tendency to prove a person=s character or that he acted in conformity therewith.  Montgomery v. State, 810 S.W.2d 372,
386-87 (Tex. Crim. App. 1991) (op. on reh=g); Jones,
119 S.W.3d at 419.  Consequently,
evidence of other crimes or extraneous misconduct may be admissible to prove
motive, opportunity, intent, preparation, plan, knowledge, or absence of
mistake or accident.  Tex. R. Evid. 404(b);  Jones, 119 S.W.3d at 419.  Such evidence may also be introduced to rebut
a defensive theory.  Jones, 119
S.W.3d at 419.








The State, as the proponent of extraneous offense
evidence, bears the burden of showing admissibility.  See Rankin v. State, 974 S.W.2d 707,
718 (Tex. Crim. App. 1998) (op. on reh=g).  The trial
court=s task is to determine whether extraneous offense
evidence is relevant for a purpose other than to prove the propensity of the
defendant to commit crimes or other bad acts. 
Jones, 119 S.W.3d at 419. 
Rulings on relevance should be left largely to the trial court, relying
on its own observations and experience, and will not be reversed absent an
abuse of discretion.  Moreno v. State,
858 S.W.2d 453, 463 (Tex. Crim. App.), cert. denied, 510 U.S. 966
(1993); Jones, 119 S.W.3d at 419. 
Appellate courts should give great discretion to the trial courts in
matters of relevancy, reversing only if the trial court acts outside Athe zone of
reasonable disagreement.@  Montgomery,
810 S.W.2d at 391.  Moreover, a trial
court=s decision regarding admissibility of evidence will be
sustained if correct on any theory of law applicable to the case, even when the
court=s underlying reason for the decision is wrong.  Romero v. State, 800 S.W.2d 539,
543-44 (Tex. Crim. App. 1990).

C.      Rule
404(b) Relevance Determination

Mayfield initially contends that the State was not
justified in its proffer of the APeeping Tom@ evidence because he did not open the door by putting
his character in question.  Mayfield also
argues that the APeeping Tom@ evidence was not relevant to prove opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident and that the APeeping Tom@ evidence had no relevance to any fact of consequence
in this case apart from its tendency to prove conduct in conformity with
character.  The State asserts that the APeeping Tom@ evidence was
admissible to rebut Mayfield=s defensive theory that L.A. and T.A. fabricated the
allegations against him.








At the outset, we address Mayfield=s contention that
he did not open the door to the admission of extraneous offenses.  Specifically, he asserts that the State
cannot rely on its own questioning of his sisterCwho stated during
cross-examination that she did not believe that Mayfield committed the charged
offenses because she knew her brotherCto the open the door.

As a general rule, the defensive theory that the State
wishes to rebut through the use of extraneous offense evidence must be elicited
on direct examination by defense and may not be elicited by Aprompting or
maneuvering@ by the State.  Wheeler
v. State, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002).  However, in this case, the record reflects
that Mayfield, not the State, initially presented the defense that he was the
victim of a frame-up.

During opening statement, Mayfield=s counsel painted
the case as an act of Adesperation@ in which M.G.A. was trying to get back at Mayfield
because he had kicked M.G.A. and her family out of his house.  Mayfield=s counsel
specifically stated that M.G.A. had influenced T.A. and L.A. Ato make these
things [allegations] up.@  Although it
was the State that asked Mayfield why other witnesses would have lied, Mayfield=s counsel carried
the frame-up defensive theory through closing argument:

Now,
I know that it is hard to imagine why someone would just come up here and
lie.  I know that.  But I also know it happens.  And I know it is hard for you to imagine how
a mother could use her children to make awful, awful charges.  But I know that happens as well, and you can
ask any judge in the country.

 








Thus, the record demonstrates that Mayfield propounded
a defensive theoryCthat he was the victim of a frame-up by M.G.A.Cthat was subject
to rebuttal evidence by the State, as long as the evidence also complied with
the specific requirements of rules 404(b) and rule 403.  See Blackwell v. State, 193 S.W.3d 1,
13 (Tex. App.CHouston [1st Dist.] 2006, pet. ref=d); see also
Keen v. State, 85 S.W.3d 405, 412-13 (Tex. App.CTyler 2002, pet.
ref=d) (showing that defensive theory was introduced
during defense=s opening statement).

As noted above, to be admissible under rule 404(b),
the extraneous offense evidence must have probative value beyond character
conformity.  Tex. R. Evid. 404(b). 
To be probative, the extraneous offense evidence admitted to rebut a
defensive theory must be similar to the charged offense.  See Wheeler, 67 S.W.3d at 888-89
(holding extraneous offense similar to charged offense because in both cases
defendant reached underneath young girl=s outer clothing
and touched her private parts while family member was nearby); Plante v.
State, 692 S.W.2d 487, 492-93 (Tex. Crim. App. 1985) (holding that high
degree of similarity between extraneous and charged offenses used in cases
proving modus operandi not required when purpose of proof is to show
intent);  Dennis v. State, 178
S.W.3d 172, 179 (Tex. App.CHouston [1st Dist.] 2005, pet. ref=d) (holding that
extraneous offense evidence admitted to rebut defensive theory of frame-up need
not be signature crime or nearly identical to charged offense; rule 404(b)
requires only similarity to charged offense).








At trial, the APeeping Tom@ evidence
consisted of Edwards=s testimony that she caught Mayfield looking through
her daughters= bedroom windows while they were undressing.  Edwards=s oldest daughter
was approximately the same age as T.A. and L.A. were when Mayfield molested
them.  Thus, this APeeping Tom@ evidence was
probative because it was similar to the charged offense in that it demonstrated
that Mayfield displayed an inappropriate sexual interest in teenage girls, thus
rebutting Mayfield=s defensive theory that he was the victim of a frame-up.

D.      Standard
Of Review For Trial Court=s Rule 403 Determination








Having determined that the APeeping Tom@ evidence is
relevant, we next review whether the trial court abused its discretion by
overruling Mayfield=s rule 403 objections. 
If a trial court determines that evidence of other crimes or extraneous
misconduct has relevance aside from character conformity, and a timely, proper
rule 403 objection is made, the trial court must make a balancing determination
under rule 403.  Montgomery, 810
S.W.2d at 388-89.  Rule 403 provides that
A[a]lthough relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence.@  Tex.
R. Evid. 403.  Only Aunfair@ prejudice
provides the basis for exclusion of relevant evidence.  Montgomery, 810 S.W.2d at 389.  Unfair prejudice arises from evidence that
has an undue tendency to suggest that a decision be made on an improper basis,
commonly an emotional one.  Id.  In evaluating the trial court=s determination
under rule 403, a reviewing court is to reverse the trial court=s judgment Ararely and only
after a clear abuse of discretion,@ recognizing that the trial court is in a superior
position to gauge the impact of the relevant evidence.  Mozon v. State, 991 S.W.2d 841, 847
(Tex. Crim. App. 1999); Jones, 119 S.W.3d at 421-22. 








The trial court=s balancing
determination must be measured against the relevant criteria by which a rule
403 decision is made.  Mozon, 991
S.W.2d at 847.  The relevant criteria in
determining whether the prejudice of an extraneous offense substantially
outweighs its probative value include (1) how compellingly the extraneous
offense evidence serves to make a fact of consequence more or less probableCa factor that is
related to the strength of the evidence presented by the proponent to show the
defendant in fact committed the extraneous offense, (2) the potential the other
offense evidence has to impress the jury Ain some irrational
but nevertheless indelible way,@ (3) the time the proponent will need to develop the
evidence, during which the jury will be distracted from consideration of the
indicted offense, and (4) the force of the proponent=s need for this
evidence to prove a fact of consequence, that is, does the proponent have other
probative evidence available to him to help establish this fact, and is this
fact related to an issue in dispute.  Id.
(citing Montgomery, 810 S.W.2d at 389-90).  When the relevant criteria are viewed
objectively and lead to the conclusion that the danger of unfair prejudice
substantially outweighs the probative value of the proffered evidence, the
appellate court should declare that the trial court erred by failing to exclude
it.  Jones, 119 S.W.3d at 422
(citing Montgomery, 810 S.W.2d at 392).

E.      Rule 403
Balancing Test

Mayfield argues that the APeeping Tom@ evidence was more
prejudicial than probative. 
Specifically, he argues that the APeeping Tom@ evidence was
prejudicial because it painted him as a pedophile.








The first of the rule 403 balancing factorsCthe strength of
the APeeping Tom@ evidence to make a fact of consequence more or less probableCweighs strongly in favor of admissibility.  The APeeping Tom@ evidence
was probative of Mayfield=s intent to
commit the sexual offenses against T.A. and L.A. by showing that he had a
similar pattern of gratifying his sexual desires through watching Edwards=s daughters undress. 
Additionally, because nothing in the record indicates that Edwards had
any motive to frame Mayfield, the rebuttal testimony provided by Edwards was
also probative of whether M.G.A. was framing Mayfield for the sexual offenses
committed against T.A. and L.A.  See
Blackwell, 193 S.W.3d at 15.

With regard to the second factor, it is doubtful that Edwards=s testimony impressed the jury in some irrational way.  The APeeping Tom@ evidence,
which did not involve any physical touching, was not worse than the charged
offenses and was not graphic.  Therefore,
the second factor weighs in favor of admissibility.

The third factorCthe time
that the State spent developing evidence of the extraneous bad actCwas not unduly lengthy.  Edwards=s testimony on direct about the APeeping Tom@ incident
took up only about twelve pages in a 575-page record.  Thus, this factor is neutral and favors
neither admissibility nor exclusion of the evidence.  See id. at 18.

The fourth factorCthe State=s need for
the extraneous bad act evidenceCwas significant.  Because T.A.
waited for several years before she told her mother about the sexual assaults
that Mayfield had perpetrated against her, there was no physical evidence of
the sexual assaults.  Moreover, there
were no witnesses other than the victims to the charged events.  Therefore, this factor weighs heavily in
favor of admissibility.








Considering all four factors together, we conclude that the probative
value of Edwards=s testimony
regarding the APeeping Tom@ incidents was not substantially outweighed by its prejudicial
impact.  Consequently, we hold that the
trial court properly overruled Mayfield=s 403 objection and admitted the APeeping Tom@ extraneous
bad act evidence to rebut Mayfield=s defensive theory that he was being framed.  See Jones, 119 S.W.3d at 423; see
also Blackwell, 193 S.W.3d at 18 (both holding that extraneous offense
evidence was properly admitted to rebut appellant=s defensive theory regarding a frame-up and that evidence was
admissible under rules 404(b) and 403). 
We overrule Mayfield=s first issue.

IV. 
Trial Court Properly Overruled Mayfield=s Motion For Mistrial

In his fifth issue, Mayfield contends that the trial court erred by
overruling his motion for mistrial due to witnesses= and bystanders= emotional
outbursts during trial testimony. 
Specifically, Mayfield argues that the emotional outbursts of L.A.,
T.A., and the Awailing
bystander@ were so
outrageous that Mayfield did not receive a fair trial.  The State responds that Mayfield failed to
preserve error, if any, regarding the emotional outbursts by failing to make a
complaint at the time of the conduct.








Rule 33.1 of the Texas Rules of Appellate Procedure provides that, as
a prerequisite to presenting a complaint for appellate review, the record must
show that the complaint was made to the trial court by a timely and specific
request, objection, or motion.  Tex. R. App. P. 33.1; Griggs v.
State, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007).  In accordance with rule 33.1, a motion for
mistrial must be both timely and specific. 
Griggs, 213 S.W.3d at 927. 
(citing Young v. State, 137 S.W.3d 65, 65-66 (Tex. Crim. App.
2004)).  A motion for mistrial is timely
only if it is made as soon as the grounds for it become apparent.  Id. (citing Wilkerson v. State,
881 S.W.2d 321, 326 (Tex. Crim. App. 1994)). 

The record reflects that both L.A. and T.A. were very emotional before
and during their testimony, crying through most of the questioning.  Right after L.A. took the stand and told the
jury her name and where she went to school, the trial court asked the jury to
retire to the jury room, presumably because she was crying.  Likewise, T.A. was crying as she entered the
courtroom before her testimony commenced and continued crying throughout her
time on the witness stand.








The following day, Mayfield presented his motion for mistrial.  One of Mayfield=s attorneys testified regarding the events of the previous day
involving L.A.=s and T.A.=s uncontrolled crying; however, there is no mention in Mayfield=s attorney=s testimony,
nor in his brief, describing the Awailing bystander.@  One of the State=s prosecutors also took the stand and gave his account of the events
from the previous day.  After hearing
testimony from the attorneys representing both sides, the trial court denied
Mayfield=s motion for mistrial.

The trial court then asked T.A. whether she wished to continue
testifying, and T.A. said that she did and that she was in better control of
her emotions.  The trial court brought in
the jury and instructed them,

Ladies and gentlemen, if you will recall at the conclusion of jury
selection on Tuesday, before we started any testimony, I gave you an
instruction at that time, and I want to reinstruct you again, that as jurors[,]
you must not be influenced in any degree by any personal feeling of sympathy
for or prejudice against the State or the Defendant in this case, for each is
entitled to the same fair and impartial consideration, okay?  With that, we are ready to proceed. 

Thus, the trial court essentially instructed the jury to disregard any
sympathy they felt for L.A. or T.A. because of the emotion they displayed.  Therefore, the trial court properly
instructed the jury to disregard, thereby curing any harm.  See Bauder v. State, 921 S.W.2d 696,
700 (Tex. Crim. App. 1996) (stating that curative instructions are presumed
effective to withdraw from jury consideration almost any evidence or argument
that is objectionable), overruled on other grounds by Ex Parte Lewis,
No. PD-0577-05, 2007 WL 57823 (Tex. Crim. App. Jan. 10, 2007).  Because any harm was cured by the trial court=s instruction to disregard, we need not address whether Mayfield
timely brought his motion for mistrial.  See
Tex. R. App. P. 47.1.  We overrule Mayfield=s fifth issue.








V. 
Reversal Not Required

In his sixth issue, Mayfield argues that the cumulative effect of the
alleged errors in issues one through five requires reversal.  Because we have held that there was no
harmful error regarding the admission of extraneous bad acts evidence and the
overruling of Mayfield=s motion for
mistrial, there is no error to accumulate. 
See Reyna v. State, No. 02-05-00285-CR, 2006 WL 2578267, at *4
(Tex. App.CFort Worth
Sept. 7, 2006, no pet.) (mem. op.) (not designated for publication) (holding
that because there was no error regarding voir dire or the failure to file a
motion to suppress, there was no error to accumulate); see also Univ. of
Tex. at Austin v. Hinton, 822 S.W.2d 197, 205 (Tex. App.CAustin 1991, no writ) (finding no error in the trial, appellate court
overruled cumulative error issue).  We
therefore overrule Mayfield=s sixth issue.

VI. 
Conclusion

Having overruled Mayfield=s six issues, we affirm the trial court=s judgments.

 

SUE
WALKER

JUSTICE

 

PANEL
A:  CAYCE, C.J.; WALKER and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)








DELIVERED:  March 29, 2007

 











[1]See Tex.
R. App. P. 47.4.